IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| Plaintiff-Appellant, | ) | |
| v. | ) | No. 23-6028 |
| JARED MICHAEL HARRISON, | ) | |
| Defendant-Appellee. | ) | |

## SUPPLEMENTAL BRIEF OF THE UNITED STATES

On June 25, 2024, this Court lifted the abatement in this case and entered an order permitting the parties to file supplemental briefs addressing the impact of *United States v. Rahimi*, 144 S. Ct. 1889 (2024), on this case. While the Court's holding in *Rahimi* was limited,[1] its criticism of the Fifth Circuit's opinion applies with equal force to the district court's analysis in this case in at least two ways. First, the district court applied the wrong standard by finding 18 U.S.C. § 922(g)(3) was unconstitutional if there was virtually any application of the statute that was unconstitutional. Second, its application of *New York Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1 (2022), was far too narrow.

---

[1] The Court's narrow holding was that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Rahimi*, 144 S. Ct. at 1903. Applying this holding, the Court held that 18 U.S.C. § 922(g)(8), as applied to the fact of the case, was constitutional.

## Discussion

After the Supreme Court decided *Bruen*, "some courts . . . misunderstood the methodology of [the Supreme Court's] recent Second Amendment cases." *Rahimi*, 144 S. Ct. at 1897. The Fifth Circuit was one such court, and the district court in this case was another. The Court explained that "the Fifth Circuit made two errors." *Id.* at 1903. "First, . . . it read *Bruen* to require a 'historical twin' rather than a 'historical analogue.'" *Id.* (quoting *Bruen*, 597 U.S. at 30). "Second, it did not correctly apply [the Supreme Court's] precedents governing facial challenges." *Id.* The district court in this case made the same two errors, and this brief addresses each below in reverse order.

**I.   The standard applied by the district court was the same erroneous standard applied by the Fifth Circuit in *Rahimi*.**

When a criminal defendant seeks to have a statute declared unconstitutional on its face, the defendant must normally "'establish that no set of circumstances exists under which the Act would be valid.'" *Id.* at 1898 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). When the burden shifts to the government because the challenged statute implicates the plain text of the Second Amendment, then "the Government need only demonstrate that [the statute] is constitutional in some of its applications." *Id.* If the defendant raises an as-applied challenge, courts do not consider

hypothetical applications of the statute but, instead, are restricted to concrete facts of the case at hand. *See Harmon v. City of Norman, Okla.*, 61 F.4th 779, 789, 792 (10th Cir. 2023). Ultimately, even when the Second Amendment is implicated, it is the court's "'task is to seek harmony, not manufacture conflict'" between the statute and the Constitution. *Rahimi*, 144 S. Ct. at 1903 (quoting *United States v. Hansen*, 599 U.S. 762, 781 (2023)).

The district court disregarded these standards, turning them on their head. For example, it distinguished historic restrictions on the possession of firearms by intoxicated persons in three ways: (1) the historic laws applied only to those "actively intoxicated or actively using intoxicants"; (2) "none of the laws appear to have prohibited the mere possession of a firearm," as opposed to carrying a firearm; and (3) the historic laws applied to public places, not homes. App. at 100–02. But those reasons do not apply to the facts of this case, nor do they apply in every case. The facts of this case, as identified by the district court, include: (1) a strong odor of marijuana came from Mr. Harrison's vehicle, permitting an inference that Mr. Harrison was intoxicated or at least recently used an intoxicant; (2) the loaded firearm was close to Mr. Harrison, meaning that he carried it rather than merely possessed it, *see id.* at 93 ("Harrison was found while carrying his firearm."); and (3) Mr. Harrison was in public when he was carrying the pistol, not his home. *Id.* at 87–88. "Rather than consider the circumstances in which

Section 922(g)([3]) was most likely to be constitutional," or even the facts of this case, the district court in this case "instead focused on hypothetical scenarios where Section 922(g)([3]) might raise constitutional concerns." *Rahimi*, 144 S. Ct. at 1903. "That error left the [district court] slaying a straw man." *Id.*

The district court committed the same error when it rejected using long-standing prohibitions on the possession of firearms by the mentally ill as part of its analysis. It found that lumping the "nearly 400,000 Oklahomans who use marijuana under state-law authorization . . . into a category with 'dangerous lunatics'" would be "a bridge too far." App. at 126. Notably, Mr. Harrison did not have state-law authorization to use marijuana, *id.* at 87, nor is it appropriate in a facial challenge for the district court to focus on the situation that "might raise constitutional concerns," *Rahimi*, 144 S. Ct. at 1903. Similarly, the district court rejected using laws disarming the mentally ill as a comparator because the mentally ill could include people with "autism, attention deficit disorder, and nicotine dependence." App. at 126. Again, the district court improperly focused on those comparisons that "might raise constitutional concerns," rather than the facts of this case or the circumstances in which § 922(g)(3) is most likely to be constitutional.

To the extent that only a facial challenge is properly before the court,[2] § 922(g)(3) is clearly facially constitutional. At a minimum, § 922(g)(3) applies to those who carry firearms while actively intoxicated. *See, e.g.*, *United States v. Perry*, No. 5:22-CR-1300, 2023 WL 7185622, at \*2-\*3 (S.D. Tex. Nov. 1, 2023) (noting the Fifth Circuit's distinction "between someone who is actively intoxicated and a regular user who used drugs at a prior time"). And as applied in those circumstances, § 922(g)(3) is a direct descendant of the laws identified by the United States and discussed by the district court related to historical restrictions on intoxicated persons. *See* App. at 100 n.34 (collecting laws). Moreover, the laws cited in the district court's order were just a sample—another group of laws disarmed and punished members of the militia when they were armed and intoxicated. *See, e.g.*, Selective Service System, *Backgrounds of Selective Service*, Vol. II, Pt. 2, at 188 (reprinting 1775 Connecticut law); *id.*, Vol. II, Pt. 8 at 25 (1947) (reprinting 1746 New Jersey law); *id.* at 43 (reprinting 1777 New Jersey law); *id.* at 72 (reprinting 1781 New Jersey law); *id.*, Vol. II, Pt. 11 at 38

---

[2] Pre-trial as-applied challenges to the constitutionality of a statute are rarely permissible, limited to circumstances where: "'[1] the operative facts are undisputed and [2] the government fails to object to the district court's consideration of those undisputed facts,' and [3] the district court can determine from them that, '*as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt.'" *United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010) (quoting *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994)).

5

(reprinting 1777 Pennsylvania law); *id.* at 97 (reprinting 1780 Pennsylvania law); (available at https://catalog.hathitrust.org/Record/100721030).

Simply put, the district court erred when it engaged in every presumption against finding § 922(g)(3) was constitutional. It reached the conclusion that § 922(g)(3) was unconstitutional based on the least culpable conduct the government would ever have to prove, rather than on either the circumstances where § 922(g)(3) was most likely to be constitutional (as required for a facial challenge) or restricted to the circumstances presented by the facts of this case (as required for an as-applied challenge). "That error left the [district court] slaying a straw man." *Rahimi*, 144 S. Ct. at 1903. This Court could reverse for this reason alone.

## II. Like the Fifth Circuit in *Rahimi*, the district court in this case "required a 'historical twin' rather than a 'historical analogue.'"

In determining the level of generality to apply, *Rahimi* did not provide a definitive answer. *See Rahimi*, 144 S. Ct. at 1916 n.4 (Kavanaugh, J., concurring) (declining to address "the level of generality at which to define a historical practice"); *id.* at 1926 (Barrett, J., concurring) ("Harder level-of-generality problems can await another day."); *id.* at 1929 (Jackson, J., concurring) ("[T]he level of generality at which a court evaluates [historic] sources . . . ha[s] [not] as yet [been] adequately clarified."). Nevertheless, it provided some guidance.

6

Reversing the Fifth Circuit, the Supreme Court explained that its "precedents were not meant to suggest a law trapped in amber." *Id.* at 1897. It explained that just like the definition of "arms" extended, "prima facie, to all instruments that constitute bearable arms, even those that were not [yet] in existence" at the time of the founding, "the Second Amendment permits more than just those regulations identical to the ones that could be found in 1791." *Id.* at 1897–98; *see* Aplt. Reply Br. at 6–11. Instead of rejecting laws that are not identical, "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 144 S. Ct. at 1898. Thus, "when a challenged regulation does not precisely match its historical precursors, 'it may still be analogous enough to pass constitutional muster.'" *Id.* (quoting *Bruen*, 597 U.S. at 30). While the "law must comport with the principles underlying the Second Amendment, . . . it need not be a 'dead ringer' or a 'historical twin.'" *Id.* (quoting *Bruen*, 597 U.S. at 30).[3]

---

[3] "[I]mposing a test that demands overly specific analogues has serious problems." *Rahimi*, 144 S. Ct. at 1925 (Barrett, J., concurring). Requiring a modern law to be "a twin, a cousin," "a mold," or "an updated model of a historical counterpart" erroneously "forces 21st-century regulations to follow late-18th century policy choices, giving us 'a law trapped in amber.'" *Id.* It also wrongly "assumes that founding-era legislatures maximally exercised their power to regulate, thereby adopting a 'use it or lose it' view of legislative authority." *Id.* "Such assumptions are flawed, and originalism does not require them." *Id.*

7

Thus, in addressing Second Amendment challenges, courts must derive principles from historic laws and then determine if the challenged modern law is consistent with those principles. *Id.*; *see also id.* at 1904 (Sotomayor, J., concurring); *id.* at 1925–26 (Barrett, J., concurring); *id.* at 1926 (Jackson, J., concurring). The district court criticized this method as a "trick." *See* App. at 126–27 n.134. But contrary to the district court's view, "[d]iscerning and developing the law in this way is 'a commonplace task for any lawyer or judge.'" *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 28); *id.* at 1926 (Barrett, J., concurring) ("Pulling principle from precedent, whether case law or history, is a standard feature of legal reasoning[.]").

*Rahimi* has made the Second Amendment analysis clearer. Assuming the burden shifts, the government must identify principles from this Nation's historic tradition of firearm regulation that are relevantly similar to the challenged law. As discussed above and in the district court, the United States has done so. Specifically, the United States demonstrated a historical tradition of disarming those who are intoxicated. More broadly, there is a historical tradition of disarming groups whom the legislature believes present a special danger when armed. *Cf. Rahimi*, 144 S. Ct. at 1901 ("[W]e do not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a

8

legislature to present a special danger of misuse." (citing *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)).

Section 922(g)(3) fits comfortably within these principles. To obtain a conviction under § 922(g)(3), "the government must show a defendant's [unlawful] drug use was contemporaneous with his firearm possession." *United States v. Bennett*, 329 F.3d 769, 776–77 (10th Cir. 2003), *abrogated on other grounds by Alleyne v. United States*, 570 U.S. 99 (2013). While "there is no need for a defendant's drug use to be simultaneous with firearm possession" and "[t]he government does not need to show the defendant was under the influence of an illegal drug at the exact same time he possessed a firearm," *id.* at 777 n.4 (internal quotation marks and alteration omitted), Section 922(g)(3) "does not [need to] precisely match its historical precursors," because "it still may be analogous enough to pass constitutional muster," *Rahimi*, 144 S. Ct. at 1898 (internal quotation marks omitted). This is because "drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993). A concern that remains even when the defendant is not actively intoxicated. *See United States v. Yancey*, 621 F.3d 681, 685 (7th Cir. 2010) ("[H]abitual drug abusers . . . are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms."). This is especially true in situations like this, where the defendant is carrying both illegal drugs and guns in public. *Cf. United States*

9

*v. Justice*, 679 F.3d 1251, 1256 (10th Cir. 2012) ("[W]hen the defendant is out and about, with drugs on his person and a loaded firearm within easy reach, one can infer that the proximity of the weapon to the drugs is not coincidental and that the firearm facilitated, or had the potential of facilitating, the drug offense by emboldening the possessor." (internal quotation marks omitted)).

## **Conclusion**

For the reasons discussed above, as well as those in the United States' opening brief and the United States' reply brief, this Court should find that 18 U.S.C. § 922(g)(3) is constitutional, vacate the district court's order dismissing the indictment, and remand for further proceedings.

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney


s/ Steven W. Creager
STEVEN W. CREAGER
Bar Number: 30052 (OK)
Assistant U.S. Attorney
210 W. Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8700 (office)
(405) 553-8888 (fax)
steven.w.creager@usdoj.gov