No. 23-6028

In the United States Court of Appeals
for the Tenth Circuit

**United States of America,**

**Plaintiff-Appellant,**

v.

**Jared Michael Harrison,**

**Defendant-Appellee.**

On Appeal from the United States District Court
For the Western District of Oklahoma
District Court No. CR-22-328-PRW
The Honorable Patrick R. Wyrick, District Judge

**Appellee's Supplemental Brief**

> Laura K. Deskin
> Assistant Federal Public Defender
> Western District of Oklahoma
> 215 Dean A. McGee Avenue, Suite 109
> Oklahoma City, Oklahoma 73102
> (405) 609-5944
> Attorney for Defendant-Appellee

## Supplemental Brief

## Application of *Rahimi* demonstrates 18 U.S.C. § 922(g)(3) as applied to Mr. Harrison is unconstitutional.

In *United States v. Rahimi*, __U.S. __, 144 S.Ct. 1889 (2024) the Supreme Court applied the *Bruen*[1] framework for analyzing Second Amendment challenges to a criminal statute for the first time. At issue was 18 U.S.C. § 922(g)(8) which criminalizes possession of a firearm by a person subject to a domestic violence restraining order if (1) that order was issued after notice and an opportunity to participate in a hearing, § 922(g)(8)(A), and (2) if the order either contains a finding that the defendant "represents a credible threat to the physical safety" of his intimate partner or his or his partner's child, § 922(g)(8)(C)(i), or "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against [those individuals] that would reasonably be expected to cause bodily injury," § 922(g)(8)(C)(ii).

---

[1] *N.Y. State Rifle & Pistol Ass'n Inc. v. Bruen,* 597 U.S. 1 (2022).

1

Rahimi brought a facial challenge only, arguing that Section 922(g)(8) violates the Second Amendment in all its applications. The Court disagreed, and also held that section 922(g)(8)(C)(i) is constitutional as applied to the facts of Rahimi's own case, an individual with a violent history found by a court to pose a credible threat to the physical safety of another. *Rahimi*, 144 S.Ct. at 1894–97. The Court expressly declined to decide whether the regulation would have been constitutional had the restraining order issued based only on section 922(g)(8)(C)(ii) which does not necessarily require a judicial finding of dangerousness. *Id.* at 1898-99. The holding was very narrow: "We conclude only this: An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 1903.

Neither Mr. Harrison's arguments nor the district court's analysis and conclusion finding section 922(g)(3) unconstitutional as applied conflict with *Rahimi*. But *Rahimi* forecloses some of the government's arguments and undercuts others, as demonstrated below.

2

A. *Rahimi* **definitively resolves Mr. Harrison remains a member of the people covered by the Second Amendment.**

*Rahimi* squarely rejected the government's proffered limitation of "the people" to the narrower subset of "law-abiding, responsible" citizens. *Compare* Gov't Opening Br. at 55–63 *and* Gov't Reply Br. at 29–31 *with Rahimi*, 144 S.Ct. at 1897 ("the right secures for Americans a means of self-defense") *and id.* at 1903 ("we reject the Government's contention that Rahimi may be disarmed simply because he is not 'responsible.'"). Notably, Justice Thomas—the author of *Bruen*, who disagreed with the majority *only* as to its conclusions after comparative analysis of historical versus modern regulations—explained that the government's argument the Second Amendment is restricted only to the law-abiding and responsible "lacks any basis in our precedents and would eviscerate the Second Amendment altogether." *Id.* at 1944 (Thomas, J., dissenting).

*Rahimi* puts the government's "law-abiding, responsible citizen" principle to rest. Mr. Harrison is an American and covered by the Second Amendment. To disarm Mr. Harrison for being an unlawful marijuana user the government must prove section 922(g)(3), as applied, is at least

3

"'relevantly similar' to laws that our tradition is understood to permit." *Id.* at 1898. The government cannot so prove.

B. **Section 922(g)(3) does not pass the history and tradition test, and *Rahimi* does not alter the analysis.**

*Rahimi* affirmed *Bruen* indeed set forth a new methodology for Second Amendment analysis that lower courts must follow—and every member of the *Rahimi* Court agreed on the methodology *Bruen* requires. *See id.* (Roberts, C.J., writing for the majority) ("As we explained in *Bruen*, the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. A court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance stuck by the founding generation to modern circumstances.'") (internal citations to *Bruen* omitted); *see also id.* at 1910 (Gorsuch, J., concurring) ("The court reinforces the focus on text, history, and tradition, following exactly the path we described in *Bruen*"); *id.* at 1931 (Thomas, J., dissenting) ("As the Court recognizes, *Bruen* provides the framework for analyzing whether a regulation such as § 922(g)(8) violates

4

the Second Amendment's mandate.") *Rahimi* is further support that application of that methodology does not support the government's contentions.

1. ***Rahimi* demonstrates this nation has no historical tradition of disarming those categorically presumed dangerous as a class.**

Beyond the fact that the government has not proven that marijuana users are even *presumably* dangerous, *Rahimi* provides no support for the government's claim that it has the authority to disarm any individual protected by the Second Amendment based on the incredibly broad and malleable notion that this nation has a historical tradition of disarming "those who are in a class believed to be presumptively dangerous." Gov't Opening Br. at 30. Justice Barrett cautioned in her concurring opinion that "a court must be careful not to read a principle at such a high level of generality that it waters down the right." *Id*. at 1926 (Barrett, J., concurring). But this is exactly what the government asks this Court to do.

Had the Supreme Court held that all people subject to protective orders present a presumptive danger to society and therefore may be disarmed, the government would have support for its proposition. But it did

not do so. The Court did not even find that Mr. Rahimi's history, replete with accounts of actual and threatened violence, *see id.* at 1894–95, made him a *presumptive* danger such that he could be disarmed notwithstanding the Second Amendment. Rather, *Rahimi* upheld section 922(g)(8)'s constitutionality as applied because Rahimi had been *judicially determined* (after notice and hearing) to represent a *credible threat* to the safety of another. *Id.* at 1896, 1898, 1901–02. It was also temporary, lasting only one to two years by the terms of the protective order. *Id.* at 1902.

    The Court found this fit comfortably within "our Nation's tradition of firearm regulation [which] distinguishes citizens who have been found to pose a credible threat to the physical safety of others from those who have not." *Id.* The Government's categorical presumptive dangerousness theory is well beyond the bounds of this principle. Five concurring opinions were filed in *Rahimi*, and, as Justice Thomas noted in his dissent, "Not a single Member of the Court adopt[ed] the Government's theory." *Id.* at 1944 (Thomas, J., dissenting); *see also id.* at 1910 (Gorsuch, J., concurring).

Just as in *Rahimi*, the government here has claimed that "a history of laws including the Militia Act [of] 1662, English laws disarming Scots and Catholics, and American laws disarming loyalists and those who aided a rebellion . . . establish a historical tradition . . . permitting the legislature to disarm members of those groups it believes to be dangerous." Reply Br. at 18.

But the Supreme Court did not divine such a principle from this particular history, describing it not in terms of allowing disarmament of the "dangerous" but rather "political opponents" which was furthermore "largely eliminated" by the time of the founding and the Second Amendment. *Rahimi*, 144 S.Ct. at 1899; *see also id.* at 1934–35 (Thomas, J., dissenting) (describing alleged dangerous person laws as driven by a desire to quash treason and rebellion, not interpersonal violence). But if the government wants to call this history one of "targeting 'dangerous' persons," as Justice Thomas explained, it is this very history that "led to the Second Amendment. It would be passing strange to permit the Government to resurrect those selfsame 'dangerous' person laws to chip away at the Amendment's guarantee." *Id.* at 1934 (Thomas, J., dissenting). The

7

proffered "'dangerous' person laws thus offer the Government no support." *Id.* at 1935. The *Rahimi* majority did not disagree with Justice Thomas.

The *Rahimi* majority instead identified a tradition distilled from surety and going armed laws—neither of which the government proffers as analogues for section 922(g)(3)—demonstrating a different, more common sensical tradition that provides for disarmament of "an individual [who] poses a clear threat of physical violence to another." *Id.* at 1901. Section 922(g)(3) does not fit within that tradition. The analogues upon which *Rahimi* relied to hold section 922(g)(8) fits within our Nation's tradition of firearm regulation are so distinguishable in both the "why" and the "how" of section 922(g)(3) that they cannot support upholding that provision. There is no tradition providing for the automatic disarmament of marijuana users or anything relevantly similar to the facts of Mr. Harrison's case, which are undisputed. *See* Gov't Opening Br. at 2–3 (stating district court's recitation of the facts in this case are "not disputed on appeal").

### 2. Marijuana users are not a class of people who have been judicially determined to be dangerous.

The government has argued that section 922(g)(3) is constitutional as applied to Mr. Harrison because marijuana users "are more likely to be violent with a firearm than an ordinary, law-abiding person." Gov't Opening Br. at 22. This has not been proven in any court, nor has it proven this is a generally accepted proposition. The Department of Justice itself recently proposed to move marijuana from Schedule I (which includes only substances deemed to have no medical value and a high potential for abuse) to Schedule III of the Controlled Substances Act (which includes only substances with moderate to low abuse potential, a currently accepted medical use, and low potential for psychological dependence) in a 92-page notice that includes no hint that marijuana users are to be considered "dangerous." *See* Department of Justice, Notice of Proposed Rulemaking, available at https://www.dea.gov/sites/default/files/2024-05/Scheduing%20NPRM%20508.pdf ("Notice"); *see also* Press Release, Off. of Pub. Aff., U.S. Dep't of Justice, Justice Department Submits Proposed Regulation to Reschedule Marijuana (May 16, 2024), https://www.justice.gov/opa/pr/justice-department-submits-proposed-

9

regulation-reschedule-marijuana. In its Notice, the Department of Justice notes that the Department of Health and Human Services has concluded evidence shows that "the vast majority of individuals who use marijuana are doing so in a manner that does not lead to dangerous outcomes to themselves or others." Notice at 15. So, while the government claims here it can disarm Mr. Harrison because it considers him presumptively dangerous as a marijuana user, or akin to the mentally ill, Gov't Opening Br. at 45–47, it is not clear the Department of Justice or the Department of Health and Human Services would agree with this characterization.

## Conclusion

*Rahimi* supports the district court's conclusion that section 922(g)(3) is unconstitutional as applied to Mr. Harrison. For the reasons submitted here and heretofore, this Court should affirm.

Respectfully submitted,

s/ *Laura K. Deskin*
Laura K. Deskin
Assistant Federal Public Defender
Counsel for Defendant-Appellee