No. 23-6028

In the United States Court of Appeals
for the Tenth Circuit

**United States of America,**

**Plaintiff-Appellant,**

v.

**Jared Michael Harrison,**

**Defendant-Appellee.**

On Appeal from the United States District Court
For the Western District of Oklahoma
District Court No. CR-22-328-PRW
The Honorable Patrick R. Wyrick, District Judge

**Appellee's Supplemental Reply Brief**

Laura K. Deskin
Assistant Federal Public Defender
Western District of Oklahoma
215 Dean A. McGee Avenue, Suite 109
Oklahoma City, Oklahoma 73102
(405) 609-5944
Attorney for Defendant-Appellee

## Supplemental Reply Brief

### I. A facial ruling is not before this court; the indictment charged Harrison as a mere marijuana user.

The district court did not dismiss Mr. Harrison's indictment based on a ruling finding section 922(g)(3) to be facially unconstitutional.[1] Yet the government continues to proceed as though this were the case. The dismissed indictment charged Mr. Harrison with being an unlawful *user of marijuana* in possession of a firearm, not merely an unlawful user of a controlled substance. App. at 8. It did not charge a general application of 922(g)(3), it charged a very specific application, critical to the challenge and to the district court's ruling: "It bears repeating that all the United States would have to prove at trial to justify depriving Harrison of his right to possess a firearm is that he is a user of marijuana." App. at 123; *See also, e.g.*, App. at 93 ("The question here is thus whether stripping someone of their right to possess a firearm solely because they use marijuana is consistent with the Nation's historical tradition of firearm regulation. If it is not, then § 922(g)(3) cannot be constitutionally applied to Harrison—no matter the reasonableness of the policy it embodies."); App. at 140 ("And so here we are, with the federal government now arguing that Harrison's mere status as a user of marijuana justifies stripping him of

---

[1] *See, e.g.*, App. at 93, 123, 125, 126, 140.

his fundamental right to possess a firearm. For all the reasons given above, this is not a constitutionally permissible means of disarming Harrison."). That is the ruling before this Court.

## II. The Fifth Circuit slayed at a straw man; the district court applied its decision to the facts before it.

Unlike the Fifth Circuit, the district court considered Mr. Harrison's case with regards to the specific application it faced and limited the scope of its review accordingly. Therefore, it did not engage in the "straw man" fallacy that doomed the Fifth Circuit's decision in *Rahimi*. *See Rahimi*, 144 S.Ct. at 1903, n.2.

The Fifth Circuit erroneously found 18 U.S.C. § 922(g)(8) facially unconstitutional by laser-focusing on one section of that statute, § 922(g)(8)(c)(ii), to the exclusion of another applicable section. Its mistake was disregarding § 922(g)(8)(c)(i) which allows for disarmament of those found by a court to pose a credible threat to the physical safety another. It may have correctly rejected "going armed" laws as sufficiently analogous to (c)(ii) because such historical laws "were tied to violent or riotous conduct and threats to society" whereas (c)(ii) "implicates a much wider swath of conduct, not inherently dependent on any actual violence or threat." *Rahimi*, 61 F. 4th 443, 459 (5th Cir. 2023). But it threw out the whole statute based on its analysis of (c)(ii) as if that was the only applicable provision. Unlike the Fifth Circuit, the

district court here did not root its decision in a hypothetical scenario that was not before it.

Thet government takes issue with the district court's discussion of medical marijuana use; however, the court did not find § 922(g)(3) unconstitutional as applied to Mr. Harrison because it found it unconstitutional to apply the statute to a medical marijuana user. Had it done so, *that* would be "slaying a straw man," as Mr. Harrison was not a medical marijuana user (at least, there was no evidence he had a medical marijuana prescription). Its comments regarding medical marijuana users came in the context of rejecting the government's characterization of marijuana users as akin to "dangerous lunatics." *See* App. at 126; *see also* App. 193 (where the government agreed during the motion hearing that its position is that marijuana users are categorically dangerous people); App. 60–61 (where the government argued § 922(g)(3) is akin to historical regulations on the mentally ill, citing to eighteenth century laws that allowed "dangerous lunatics" to be imprisoned).

Likewise, the district court's discussion of people with "autism, attention deficit disorder, and nicotine dependence" came in response to the government's argument that all drug users are analogous to the mentally ill in that both groups "have difficulty exercising self-control, making it dangerous for them to possess deadly firearms." App. at 126 (district court's discussion);

3

App. at 64 (where government made this argument). It took issue with the government's characterization pointing out such an "argument appears to have no limit." *Id*. Had it dismissed Mr. Harrison's indictment because § 922(g)(3) could be used to disarm a person with autism, attention deficit, or who smokes cigarettes *that* would be slaying a straw man. But that is not what the district court did.

The government also argues the district court erroneously found § 922(g)(3) "was unconstitutional based on the least culpable conduct the government would ever have to prove,"[2] Gov't Supp. Br. at 6, when, "[a]t a minimum, [it] applies to those who carry firearms while actively intoxicated," *id*. at 5. But Mr. Harrison is accused merely of being a marijuana user, not of being actively intoxicated. Intoxication would not have to be proven at trial—nor could it be proven: Officers never conducted a field sobriety test, nor was a blood sample taken to determine if he was under the influence of marijuana or any other substance. App. at 88.

The straw man argument is that of the government.

---

[2] Presumably the government means the least culpable conduct the government would ever have to prove is being a marijuana user.

## III. The district court properly applied the methodology required by *Bruen/Rahimi*.

The district court's analysis follows the Supreme Court's rulings in both *Bruen* and *Rahimi*. Contrary to the government's criticism of the district court, *see* Gov't Supp. Br. at 8, it is apparent that the district court knows how to pull principle from precedent—and did so. Looking at every proffered justification for the modern law, the district court noted one overarching principle—and that is the same principle identified in *Rahimi*: "'that the legislature may disarm those who have demonstrated a proclivity for violence through past violent, forceful, or threatening conduct (or past attempts at such conduct).'" App. at 117–18, quoting *Kanter v. Barr*, 919 F.3d 437, 456 (7th Cir. 2019) (Barrett, J., dissenting). It continued, "the historical record demonstrates that the public understanding of the scope of the Second Amendment was tethered to the principle that the Constitution permitted the dispossession of persons who demonstrated that they would present a danger to the public if armed." App. at 118, quotations and citation omitted. *Rahimi* echoes exactly this.

But unlike the procedural protections inherent in the upheld §922(g)(8)(c)(i), which requires a judicial determination that the individual represents a credible threat to the physical safety of another before disarmament is permissible, § 922(g)(3) disarms Mr. Harrison based on the legislature's supposition that a marijuana user is more likely to have difficulty

exercising self-control and its further supposition that he therefore poses a general risk to the safety of others at all times, whether or not actually intoxicated, without evidence of anything more. It is his mere status as a marijuana user that triggers automatic disarmament and nothing more.

That "guns and drugs" in general can be a dangerous combination is not the point. The question is whether the Second Amendment permits Mr. Harrison to be disarmed merely for being a marijuana user. Does its text, and our nation's history and tradition support this? The answer is no. "Our nation's tradition of firearm regulation distinguishes citizens who have been found to pose a credible threat to the physical safety of others from those who have not." *Rahimi*, 144 S.Ct. at 1902. A mere marijuana user belongs in the latter category.

The *Rahimi* Court did not rely on *predictive* judgments about the likelihood of Mr. Rahimi posing public threat if armed. It upheld section (g)(8)'s temporary ban because, like the historical analogues, it required a judicial finding, after notice and hearing, that Mr. *Rahimi represented an individualized credible physical threat.* As explained in previous briefing to this Court, the government's speculative fears regarding alleged "dangerousness" of marijuana users at large are unfounded. Regardless, it has identified no tradition of disarming those who the government declares are "presumptively" risky. Even a smattering of intoxication laws (only one of

which appears to be even close to the time of the founding), *see* App. at 61–62 (government's list of intoxication laws provided to the district court), limited the *use* of firearms, but not *possession* during the period of active intoxication, on the principle the alcohol impaired the user to the point he could not safely *use* a firearm in a crowded place. *See, e.g.,* App. at 118. The historical principle the court ask this Court to pull—that the government can disarm a person for being a marijuana user *based on no more than its own presumption of unindividualized risk*—is unmoored in any tradition reasonably gleaned from the government's proffered history.

The Supreme Court cautions, "Courts must proceed with care in making comparisons to historic firearms regulations, or else they risk gaming away an individual right the people expressly preserved for themselves in the Constitution's text." *Rahimi*, 144 S.Ct. at 1908 (Gorsuch, J., concurring). The district court faithfully applied the Supreme Court's metrics; this Court should affirm.

Respectfully submitted,

*/s/ Laura K. Deskin*
Laura K. Deskin
Assistant Federal Public Defender